TRACY L. WILKISON
Acting United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section
BRENT A. WHITTLESEY (Cal. Bar No. 73493)
Assistant United States Attorney
Asset Forfeiture Section
    Federal Courthouse, 14th Floor
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-5421
    Facsimile: (213) 894-0142
    E-mail: Brent.Whittlesey@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>$230,000.00 IN U.S. CURRENCY,<br><br>        Defendant. | No. 8:21-cv-00760<br><br>VERIFIED COMPLAINT FOR FORFEITURE<br><br>21 U.S.C. § 881(a)(6)<br><br>[FBI] |

    Plaintiff United States of America brings this claim against defendant $230,000.00 In U.S. Currency, and alleges as follows:

## JURISDICTION AND VENUE

    1.    This is an <u>in rem</u> civil forfeiture action brought pursuant to 21 U.S.C. § 881(a)(6).

    2.    This Court has jurisdiction over the matter pursuant to 28 U.S.C. §§ 1345 and 1355.

3. Venue lies in this district pursuant to 28 U.S.C. § 1395.

PERSONS AND ENTITIES

4. The plaintiff in this action is the United States of America.

5. The defendant in this action is $230,000.00 in U.S. currency ("defendant currency"), which is a combination of $130,000.00 in U.S. currency seized during a search of a gray Ford F-150 Raptor bearing California license plate 66064D2 ("F-150") occupied by Epitasio Serbantes ("Serbantes") and Magdalena Gonzalez Fernandez ("Fernandez"), registered to Luz Chavez ("Chavez"), and $100,000.00 in U.S. currency seized during a search of a silver Nissan Rogue bearing California license plate 8KGN720 ("Nissan"), occupied by Maria Esperanza Perez ("Perez"), registered to EAN Holdings LLC. The search of both the F-150 and the Nissan was conducted on October 16, 2020 by law enforcement officers in the parking lot at Woodbury Town Center Mall, 6460 Irvine Boulevard, Irvine, California (the "parking lot").

6. The defendant currency is currently in the custody of the United States Marshals Service in this district, where it will remain subject to this Court's jurisdiction during the pendency of this action.

7. The interests of Serbantes, Fernandez, Perez, Chavez and EAN Holdings LLC may be adversely affected by these proceedings.

FACTS SUPPORTING FORFEITURE

8. On October 16, 2020, during the course of a Federal Bureau of Investigation Inland Regional Narcotics Enforcement Team and Inland Empire Hybrid Drug Task Force ongoing narcotics investigation regarding a Mexican Drug Trafficking Organization ("DTO"), officers

2

began conducting surveillance on a residence in Riverside, California ("Serbantes residence").[1]  Based on reliable information, officers believed Serbantes, with a code name of "Wicho," used a telephone number subscribed to Serbantes to participate in a meeting to conduct an exchange of narcotics proceeds.

9. During the surveillance, officers observed Serbantes exit the Serbantes residence in the F-150 and drive to the parking lot where the F-150 was driven around the parking lot multiple times and passed several open parking stalls before parking next to the Nissan.

10. Serbantes exited the F-150 carrying a small white satchel and entered into the front passenger seat of the Nissan.

11. After a few minutes, Serbantes exited the Nissan empty handed and returned to the F-150, at which time, officers terminated the surveillance and initiated contact with the occupants of the F-150 and Nissan.

12. The occupant of the Nissan provided identification to the officers which identified her as Perez.

13. One of the occupants of the F-150 (subsequently identified as Serbantes) had no identification on his person and would not provide officers with his name or home address.  This comports with the information obtained earlier in the investigation instructing Serbantes to carry no identification during the meeting to exchange narcotics proceeds.

14. Based on open-source information and a Department of Motor Vehicle database search, officers were able to identify the F-150

---

[1] Pursuant to Local Rule 5.2-1, the residence address has been omitted from this Complaint.

occupant as Serbantes. The passenger of the F-150 was identified as Fernandez.

15. Officers explained the nature of the investigation to Serbantes and Perez. Serbantes gave written consent to search the F-150, and Perez gave written consent to search the Nissan.

16. During the search of the Nissan, officers located the white satchel, which is further described as a Gucci bag, and that officers witnessed Serbantes transfer from the F-150 to the Nissan.

17. The white satchel contained a large amount of U.S. currency, which was later determined to total $100,000.00 (i.e., a portion of the defendant currency). The currency was packaged in nine stacks of bills. Eight of the stacks consisted entirely of $100 bills. The ninth stack consisted of $100 and $50 bills.

18. During the search of the F-150, officers located a brown and tan checkered colored purse which contained an identical white Gucci bag to the white Gucci bag located in the Nissan.

19. Inside the white Gucci bag located in the F-150, there were two black bags containing a large amount of U.S. currency, which was later determined to be $130,000.00 (i.e., the remaining portion of the defendant currency). The currency was packaged in sixteen stacks of bills. One of the bags contained six stacks of $100 bills that were secured with a paper tag that had "$10,000" written on them. The other sack contained ten stacks of $100 bills, some of which were secured with the same type of paper tags as the others, and some of which were secured with rubber bands.

20. The defendant currency consisted of 56 $20 bills and 2,272 $100 bills. These denominations of bills and these methods of

packaging of currency are consistent with currency used in narcotics transactions.

21. During the officers' contact with Serbantes and Perez, officers learned the target of the investigation was aware of the officers' contact with Serbantes and Perez, and the target reiterated that information to other members of the DTO, instructing them they did not have to worry if Serbantes cooperated because Serbantes was told not to carry any identification that would reveal his identity or residence. The target also advised other DTO members to not answer any calls coming from Serbantes' phone number.

Interview of Serbantes

22. Serbantes said he was in the process of purchasing property in Mexico, and the real estate agent Serbantes was in contact with advised Serbantes to deliver $100,000 to Perez in the City of Irvine.

23. Serbantes said the $100,000 was a partial payment for the property, and additional currency would be sent to Mexico through someone else.

24. Serbantes explained the currency in the F-150 was the additional payment but Serbantes was unable to provide a name or any contact information for the real estate agent advising him.

25. Serbantes also told officers that the U.S. currency located in the F-150 and the Nissan belonged to him.

26. Serbantes said he had contacted a friend in Mexico known as "Aqua" who arranged for the U.S. currency to be delivered to Mexico.

27. Aqua gave Serbantes Perez's telephone number, and Serbantes called Perez to provide Perez with directions to meet to receive the $100,000.

28. Serbantes said he did not know exactly how the money was going to get to Mexico but Serbantes would be contacted when the money arrived in Mexico.

29. Serbantes said the additional currency in the F-150 was going to be picked up by someone else (not Perez) and delivered to Mexico.

30. Serbantes said all of the U.S. currency was going to be taken to Mexico to buy property in Mexico.

31. Officers asked Serbantes why he would give complete strangers large amounts of U.S. currency to be taken to Mexico, Serbantes said that's just how he was going to do it.

32. Serbantes said he owned four Mexican restaurants located in California and estimated his yearly income to be approximately $400,000, which was the only source of income for the Serbantes household.

33. Serbantes was unable to provide any financial documentation for the U.S. currency or his income, explaining the documentation was with his accountant but he did not know the name of the accountant's company or the contact information for the accountant's company.

Interview of Fernandez

34. Fernandez said she was just out with her son (Serbantes) and did not know anything about any U.S. currency located by the officers.

35. Fernandez said she did not see any U.S. currency inside the F-150 or the exchange between Serbantes and Perez.

36. Fernandez does not have any interest in the defendant currency and voluntarily signed Disclaimer of Ownership forms for the defendant currency.

Interview of Perez

37. Perez said she worked in the fashion district of Los Angeles in the purchasing department for several stores.

38. Perez said she was instructed to pick up money in the city of Irvine.

39. Perez said someone in Mexico told her to come pick up the money.

40. Perez said none of the defendant currency located in the Nissan or the F-150 belonged to her.

41. Perez said she had been making extra money over the past few months delivering money to different locations throughout the county of Los Angeles.

42. Perez was contacted via telephone by an unknown number from Mexico in which Perez was told when and where to pick up the currency.

43. Perez said an unknown person called her earlier on October 16, 2020 and told Perez that she was going to be contacted by someone to arrange a pick-up.

44. Approximately one hour before the officers made contact with Perez as an occupant of the Nissan, Serbantes contacted Perez and told Perez to meet him in the parking lot.

45. Perez said this would be the first time she met Serbantes and did not know how much U.S. currency she would be receiving from Serbantes.

46. Perez said when she arrived at the designated parking lot Serbantes walked over to her vehicle (the Nissan) and opened the front passenger side door and placed the white Gucci bag on the floorboard.

7

47. Serbantes did not say anything to Perez, closed the door and walked away.

48. Perez said she would usually receive another phone call from Mexico after Perez picked up the U.S. currency and would be instructed where to go and how much of the U.S. currency to deliver to each business.

49. Perez voluntarily signed Disclaimer of Ownership forms for the defendant currency.

50. Serbantes has prior convictions for possession of a controlled substance for sale and transportation of a controlled substance.

## CLAIM FOR RELIEF

16. Based on the above, plaintiff alleges that the defendant currency represents or is traceable to proceeds of illegal narcotic trafficking or was intended to be used in one or more exchanges for a controlled substance or listed chemical, in violation of 21 U.S.C. § 841 et seq. The defendant currency is therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

WHEREFORE, plaintiff United States of America prays:

(a) that due process issue to enforce the forfeiture of the defendant currency;

(b) that due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed;

(c) that this Court decree forfeiture of the defendant currency to the United States of America for disposition according to law; and

(d) for such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

DATED: April 21, 2021

TRACY L. WILKISON
Acting United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Division

   /s/ *Brent A. Whittlesey*
BRENT A. WHITTLESEY
Assistant United States Attorney
Asset Forfeiture Section

Attorneys for Plaintiff
UNITED STATES OF AMERICA

VERIFICATION

I, David Ricker, hereby declare that:

1. I am a Special Agent with the Federal Bureau of Investigation.

2. I have read the above Verified Complaint for Forfeiture and know its contents. It is based upon my own personal knowledge and reports provided to me by other law enforcement agents.

3. Everything contained in the Complaint is true and correct, to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed April 21, 2021 in Los Angeles, California.

DAVID RICKER
Special Agent
Federal Bureau of Investigation

10